# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

FRANKLIN C. AZUBIKE
649 East 104 Street
Brooklyn, NY 11236

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER:

2005-M-0427-RBC

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **March 14, 2005,** in **Norfolk** County, in the District of **Massachusetts** the defendant did, (Track Statutory Language of Offense)

knowingly, and intentionally conspired with others known and unknown, to possess with intent to distribute, and to distribute 100 grams or more of heroin, a Schedule I controlled substance,

in violation of Title __21__ United States Code, Section(s) __841(a)(1) and (b)(1)(B)(i)__.

I further state that I am a(n) __U.S. Immigration and Customs Enforcement__ and that this complaint is based on the following facts:
                                           Official Title

See Attached Affidavit of Special Agent CHRIS DIORIO

Continued on the attached sheet and made a part hereof:    X Yes    ☐ No

_____
Signature of Complainant
CHRIS DIORIO
Special Agent, U.S. Immigration and
Customs Enforcement

Sworn to before me and subscribed in my presence,

March 15, 2004 at 11:08 am        Boston, Massachusetts
Date                                City and State

**ROBERT B. COLLINGS**
**UNITED STATES MAGISTRATE JUDGE**
_____
Name and Title of Judicial Officer               Signature of Judicial Officer

**AFFIDAVIT OF SPECIAL AGENT CHRIS DIORIO**

I, Special Agent Christopher W. Diorio, depose and state as follows:

1. I am a Special Agent ("SA") with the U.S. Immigration and Customs Enforcement ("ICE"). I have been a Special Agent with U.S. Immigration and Customs Enforcement for over two years. Over this time I have conducted dozens of narcotics smuggling cases. From September 1997 through September 2002, I was a Federal Law enforcement officer with the a U.S. Coast Guard counter narcotics team. While I was attached to the U.S. Coast Guard, I participated and conducted numerous boardings and searches of vessels and participated in the seizure of over 2,000 kilograms of illegal narcotics. I have received training at the Federal Law Enforcement Training Center in all aspects of drug smuggling, including the structure, organization, and operation of international drug smuggling groups, the techniques used by such persons to finance and import drugs, and the identification of documents and other records commonly generated by such operations.

2. I submit this affidavit in support of a criminal complaint charging **FRANKLIN C. AZUBIKE,** with conspiracy to posses with the intent to distribute and to distribute 100 grams or more

of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B)(i).

3. The information contained in this Affidavit is based upon facts and circumstances learned by me personally and information related to me by other law enforcement officers involved in the investigation. This affidavit does not set forth all the facts developed during the course of this investigation. Rather, it sets forth only those facts that are necessary and sufficient to establish probable cause to believe that **AZUBIKE** has committed the crime set forth in the accompanying Criminal Complaint.

4. On February 13, 2005, Customs and Border Protection (CBP) Inspectors operating at the FedEx terminal in Memphis, TN selected a FedEx parcel bearing Airway Bill # 849562178690 for inspection. The package was addressed to a residence in MA. During the inspection, Inspectors discovered approximately two kilograms of a brown powdery substance concealed within the walls of a briefcase. The substance field-tested positive for heroin. The package was subsequently seized and forwarded to ICE agents in Boston for an attempted controlled delivery to the named recipient of the package.

5. On February 15, 2005, ICE agents made a controlled delivery to an individual who later agreed to cooperate with law

enforcement(hereinafter "CS-1"). The FedEx parcel was addressed to CS-1. Following the delivery of the FedEx parcel to CS-1, CS-1 was not arrested and has not been prosecuted for any offense related to the delivery of the heroin.

6. Following the delivery of the package, CS-1 agreed to cooperate with law enforcement agents and told myself and other agents that an individual named "Solomon" who lives in Uganda was the sender of the package. CS-1 stated that "Solomon" had sent two earlier packages to CS-1 in MA. CS-1 agreed to cooperate with law enforcement agents in the investigation and agreed to make recorded phones calls with a tape recorder I provided CS-1.

7. On Friday, March 4, 2005, CS-1 received another Federal Express package at CS-1's address in MA. The FedEx package contained a briefcase similar to the package seized on February 13, 2005. Immediately upon receiving the package, CS-1 contacted me to inform me that CS-1 had received another package from Uganda that CS-1 believed was another shipment of heroin from "Solomon." Within approximately thirty minutes, myself and ICE SA Eric Laforte met with CS-1 and retrieved the briefcase from CS-1. Upon further inspection, I and SA LaForte found approximately two kilograms of suspected heroin hidden in a secret compartment of the briefcase. The suspected heroin was hidden in the walls of briefcase in the same manner as the

3

briefcase seized on February 13, 2005. Soon thereafter, I conducted a field test of the suspected heroin and it returned a positive reaction for the presence of heroin.

8. During the late night of March 4, 2005 or the early morning of March 5, 2005, CS-1 received a phone call from "Solomon" who was calling from somewhere in Africa to confirm the delivery of the heroin. According to CS-1, the caller, "Solomon," was the same individual who had sent the earlier three packages to CS-1 in MA. CS-1 recorded this phone call, but law enforcement agents were not present during this phone call. During the recorded call, "Solomon" told CS-1 that an individual named "Mike" from New York would call CS-1 to arrange the pickup of the package from CS-1.

7. On Tuesday, March 8, 2005, CS-1 received a phone call from an individual who identified himself as "Mike." CS-1 recorded this phone call, but law enforcement agents were not present during this phone call. During the recorded phone call, "Mike" told CS-1 that he (Mike) would have "Franklin" call CS-1 right away to make arrangements for "Franklin" to pick up the heroin from CS-1.

8. On March 9, 2005, other law enforcement agents and I removed the approximately two kilograms of heroin from the briefcase that CS-1 received on March 4, 2005. Inside the same

briefcase, agents placed approximately 100 grams of a representative sample from the heroin as well as an additional two kilograms of "sham" substance made to look like heroin.

9. On Friday evening, March 11, 2005, CS-1 received a phone call from a man who identified himself as "Hajji" (an individual who was later identified as the defendant, FRANKLIN C. AZUBIKE). CS-1 told "Hajji" (AZUBIKE) that he was supposed to receive a phone call from "Jonathan" (confusing Jonathan for Franklin). "Hajji" responded that he was the one who was supposed to pickup the package from CS-1 and stated that he ("Hajji") had all of CS-1's information. "Hajji" told CS-1 that he was in Connecticut and en route to CS-1's location to pickup the parcel from CS-1. Under the direction of law enforcement, CS-1 told "Hajji" that since CS-1 had not heard from anyone about the package, CS-1 had secured the package in another location with a friend. "Hajji" told CS-1 that he ("Hajji") was supposed to pick up the package that night and that he had to call "Mike" to figure out what to do. A short time later, CS-1 received another call from "Hajji." During this call, "Hajji" told CS-1 that he could not get in touch with "Mike" and emphasized that he ("Hajji") had to pickup the package from CS-1 tonight. Shortly thereafter, CS-1 received a phone call from "Mike." CS-1 told "Mike" that he had secured the package with a friend because CS-1

5

had not heard from anyone about the package. CS-1 further told "Mike" that CS-1 did not have access to the package until Monday. CS-1 also asked "Mike" about the $2,000 that CS-1 was supposed to receive for accepting the package. "Mike" told CS-1 that he would send "the guy" back on Monday to pick up the package and that the guy would have the money for CS-1. Mike told CS-1 that he would send the guy early in the morning so he would arrive at noon. CS-1 recorded each of the above phone calls, but law enforcement agents were not present during these recorded calls.

10. Over the weekend of March 12 and 13, 2005, CS-1 received a phone call from "Solomon" who was calling from somewhere in Africa. The phone call was a three-way call with another individual, an unidentified male, participating in the call. CS-1 recorded this phone call, but law enforcement agents were not present during the recorded call. During the recorded call, "Solomon" asked CS-1 about the delay in CS-1 delivering the package of heroin. CS-1 explained that although Mike had told CS-1 that CS-1 would hear from "Franklin" immediately, CS-1 had not heard from anyone about the package for several days. CS-1 told "Solomon" that for this reason, CS-1 had secured the package with a friend.

11. During the morning of Monday, March 14, 2005, CS-1 received several phone calls from AZUBIKE, a.k.a. "Hajji," who

6

this time referred to himself as "Al Hajji." During these phone calls, "Al Hajji" asked CS-1 for directions to CS-1's location to retrieve the package from CS-1. During these calls, per instructions from law enforcement, CS-1 told "Al Hajji" (AZUBIKE) to drive to the parking lot of the Showcase Cinema located at the intersection of Route 60 and Route 1 in Revere, MA. "Al Hajji" told CS-1 that he was driving a blue Impala. CS-1 recorded each of the above phone calls, but law enforcement agents were not present during these recorded calls.

12. Between 11:00 a.m. and 12:00 p.m. on the same day, "Al Hajji" (AZUBIKE) called CS-1 and told CS-1 in a recorded phone call that he (AZUBIKE) did not like the location (the parking lot for the Showcase Cinema) because there were not enough cars and it was too open. CS-1 told AZUBIKE that it was the same location that CS-1 always used. AZUBIKE told CS-1 that the location was too risky. Under the direction of law enforcement, CS-1 called AZUBIKE moments later and told AZUBIKE that CS-1 agreed that the location was not right and told AZUBIKE to go across the street to the parking lot of a Stop and Shop grocery store. Around the same time, law enforcement conducting physical surveillance observed a blue Imapla with Maryland registration tags 1AGA06, drive from the Showcase Cinema parking lot to the Stop and Shop parking lot across the street.

7

13. Law enforcement agents then observed the blue Impala drive to the Stop and Shop parking lot. The driver and only occupant of the vehicle, who was later identified as AZUBIKE, got out of the blue Impala and walked into the Stop and Shop grocery store. Moments later, per law enforcement instructions, CS-1 called AZUBIKE and gave AZUBIKE a description of CS-1's vehicle. This call was not recorded. Moments later, agents observed the defendant, FRANKLIN AZUBIKE, walk out of Stop and Shop and get into the passenger seat of CS-1's vehicle. Law enforcement were able to overhear the conversation between CS-1 and AZUBIKE in the car via a radio transmitter body wire, but because of a technical failure the transmitter did not record the conversation. Inside the vehicle, according to CS-1, AZUBIKE gave CS-1 $2,000 in cash. AZUBIKE then asked CS-1 for $50 from that $2,000 in order to get gas for the return trip to New York. AZUBIKE asked CS-1 not to tell "Mike" that CS-1 gave him (AZUBIKE) this money for gas. CS-1 told AZUBIKE that the briefcase was in the trunk area of his car, a Jeep Cherokee. Shortly thereafter, AZUBIKE got out of CS-1's car and drove the blue Impala to CS-1's location in the parking lot. AZUBIKE retrieved the briefcase from CS-1's vehicle, placed the briefcase into the trunk of the blue Impala, and departed the area in the blue Impala. AZUBIKE was the only occupant of the vehicle.

14. Law enforcement maintained continuous surveillance of the blue Impala driven by AZUBIKE, following AZUBIKE until he reached Interstate 95 South near Canton, MA. Around this time, at around 1:30 p.m., Massachusetts State Police (MSP) trooper James Hanlon performed a vehicle stop of the blue Impala and identified the driver and sole occupant as FRANKLIN C. AZUBIKE through a New York driver's license. During the car stop, AZUBIKE told trooper Hanlon that he (AZUBIKE) had been visiting his cousin in Boston. When trooper Hanlon asked AZUBIKE where in Boston his cousin lived, AZUBIKE was unable to provide an answer. Trooper Hanlon then asked AZUBIKE where he met his cousin. After a long pause, AZUBIKE said that he met his cousin at the Colonnade Hotel in Boston. AZUBIKE said that he arrived in Boston last night, but was returning to New York.

15. Trooper Hanlon then asked AZUBIKE if he could look inside AZUBIKE's vehicle. AZUBIKE agreed and consented to the search. Inside the trunk of the vehicle, trooper Hanlon found the same briefcase that contained 100 grams of a representative sample from the two kilograms of heroin placed inside the briefcase on March 9, 2005. After finding the briefcase, AZUBIKE was arrested.

16. Based on the information contained in this Affidavit, all of which is true and accurate to the best of my knowledge, information and belief, I believe that there is probable cause to believe that **FRANKLIN C. AZUBIKE** has committed violations of 21 U.S.C. § 841(a) and 846.

**CHRIS DIORIO**
Special Agent
United States Bureau of Customs and
Immigration Enforcement

Sworn to and subscribed before me this 15th day of March, 2005.

**ROBERT B. COLLINGS**
United States Magistrate Judge

| Criminal Case Cover Sheet | U.S. District Court - District of Massachusetts |

**Place of Offense:** Revere, MA    **Category No.** _____    **Investigating Agency** ICE

**City** Revere, MA    **Related Case Information:**

**County** Norfolk

Superseding Ind./Inf. _____    Case No. _____
Same Defendant _____    New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   FRANKLIN C. AZUBIKE    Juvenile   ☐ Yes   [x] No

Alias Name   _____

Address   649 East 104 Street, Brooklyn, NY

Birth date (Year only): 1962   SSN (last 4 #): _____   Sex M   Race: Hispanic   Nationality: Colombia

**Defense Counsel if known:** _____    **Address:** _____

**Bar Number:** _____

**U.S. Attorney Information:**

AUSA   Neil Gallagher    Bar Number if applicable _____

Interpreter:   ☐ Yes  [x] No    List language and/or dialect:   n/a

Matter to be SEALED:   ☐ Yes   [x] No

☐ Warrant Requested    ☐ Regular Process    ☐ In Custody

**Location Status:**

Arrest Date:   March 14, 2005

☐ Already in Federal Custody as _____ in _____
☐ Already in State Custody _____   ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:   Ordered by _____ on _____

Charging Document:   [x] Complaint   ☐ Information   ☐ Indictment

Total # of Counts:   ☐ Petty _____   ☐ Misdemeanor _____   [x] Felony   1 Count

Continue on Page 2 for Entry of U.S.C. Citations

[x]   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date:   March 14, 2005    Signature of AUSA:

≋JS 45 (5/97) - (Revised USAO MA 3/25/02)  P⬤ of 2 or Reverse

**District Court Case Number (To be filled in by deputy clerk):** _____

**Name of Defendant**  FRANKLIN C. AZUBIKE

## U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 21 U.S.C. Sec. 846 | Conspiracy to Distribute Heroin | 1 |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:**